# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Deborah E. Knoblauch, | CASE NO. 3:13-cv-02598-GBC |
| Plaintiff, | (MAGISTRATE JUDGE COHN) |
| v. | MEMORANDUM |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | Docs. 1, 8, 9, 10, 11, 13, 14, 15 |

## MEMORANDUM

### I.    Procedural Background

On July 16, 2010, Deborah E. Knoblauch ("Plaintiff") protectively filed an application as a claimant for disability insurance benefits, with an alleged disability onset of October 31, 2009.  (Administrative Transcript, hereinafter, "Tr." at 12, 83).  After Plaintiff's claim was denied at the initial level of administrative review, at Plaintiff's request, on February 4, 2012, an administrative law judge ("ALJ") held a hearing at which Plaintiff, who was represented by an attorney, and a vocational expert ("VE") appeared and testified.  (Tr. 55-82).  On February 23, 2012, the ALJ found that Plaintiff was not disabled and not entitled to benefits.

(Tr. 9-23). On April 18, 2012, Plaintiff filed a request for review with the Appeals Council (Tr. 6-8), which the Appeals Council denied on August 19, 2013, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-3).

On October 18, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3), to appeal a decision of the Commissioner of the Social Security Administration denying social security benefits. Doc. 1. On March 19, the Commissioner ("Defendant") filed an answer and an administrative transcript of proceedings. Doc. 8, 9. On April 3, 2014, Plaintiff filed a brief in support of the appeal ("Pl. Brief"). Doc. 10. On April 30, 2014, the Court referred this case to the undersigned Magistrate Judge. On May 8, 2014, Defendant filed a brief in response ("Def. Brief"). Doc. 11. Both parties consented to the referral of this case to the undersigned Magistrate Judge, and an order referring the case to the undersigned Magistrate Judge was entered on August 1, 2014. Doc. 13, 14, 15.

## II. Relevant Facts in the Record

Plaintiff was born on December 3, 1957, and thus was 54 years old and classified by the regulations as a person closely approaching advanced age through the date of the decision rendered on February 23, 2012. (Tr. 18); 20 C.F.R. §

404.1563(d).  Plaintiff graduated high school.  (Tr. 18, 130).  Plaintiff worked as a weaver in a textile mill for 33 years until the plant closed on April 15, 2009.  (Tr. 129-30).   On October 8, 2009, Plaintiff completed a ten week course of basic computer, basic math, and basic English.  (Tr. 72).

## A. Relevant Treatment History and Medical Opinions

## 1. Hospital Treatment

On October 31, 2009, Plaintiff went to St. Joseph Medical Center emergency room ("ER").   (Tr. 228, 242).    Plaintiff reported shortness of breath with ambulation and cold air, as well as a productive cough.  (Tr. 242).  Plaintiff stated that she was a one-and-a-half pack per day smoker, but that she "has felt so sick that she has only been smoking about a half pack per day."  (Tr. 229, 242).   On examination, Plaintiff was in moderate respiratory distress, with a productive and loose cough.  (Tr. 229).  Plaintiff received a breathing treatment, and, within an hour, Plaintiff was speaking easier with no cough.  (Tr. 230-31).  Within four hours of her arrival at the ER, Plaintiff reported that she was feeling much better.  (Tr. 233).  Plaintiff was admitted to the hospital for two days.  (Tr. 230, 235).

Hospital records indicate that Plaintiff was suffering from acute hypoxemic respiratory failure as well as chronic obstructive pulmonary disease ("COPD") exacerbation.   (Tr. 244).   Hospital records also indicate that Plaintiff had an

extensive 40-year smoking history in which she smoked one to one-and-a-half packs of cigarettes each day; she had never previously been hospitalized for shortness of breath.  (Tr. 244, 251).  Chest x-rays revealed no active disease, that Plaintiff's heart was normal in size, and that her lung fields were "satisfactorily aerated without evidence of active inflammatory or neoplastic disease."  (Tr. 237). Plaintiff received antibiotics, additional nebulizer treatments and Heparin.  (Tr. 244).

By the second day, Plaintiff reported to physicians that she "fe[lt] better," and hospital records indicate that Plaintiff was coughing less, eating fine, and that she was in no acute distress.  (Tr. 246).  Plaintiff was discharged on November 3, 2009.  (Tr. 251).  The discharge summary reports that Plaintiff's respiratory failure secondary to COPD exacerbation had been resolved and that Plaintiff had been counseled regarding smoking cessation.  (Tr. 251).

On February 24, 2010, Plaintiff returned to the ER for complaints of respiratory distress and shortness of breath.  (Tr. 277).  Upon examination, Plaintiff was in mild respiratory distress and her lung sounds were diminished.  (Tr. 278). After receiving oxygen, Plaintiff reported that she felt much better (Tr. 278).  A chest x-ray revealed no active disease in Plaintiff's chest and that her "lung fields [we]re satisfactorily aerated without evidence of active inflammatory or neoplastic

disease." (Tr. 284). Plaintiff was not admitted to the hospital and was discharged from the ER within seven hours. (Tr. 282).

On June 7, 2010, Plaintiff was admitted to Schuylkill Medical Center for complaints related to shortness of breath. (Tr. 300). The admission diagnosis was "left lower lobe pneumonia," "acute exacerbation of COPD," and "tobacco use disorder." (Tr. 300). A chest x-ray showed "[m]ild diffuse bilateral pulmonary interstitial prominence, which is most likely chronic, without specific evidence of acute cardiopulmonary disease." (Tr. 309). Plaintiff was treated with antibiotics, nebulizers, an anti-inflammatory drug and "her usual medications." (Tr. 301). She was discharged on June 10, 2010. (Tr. 300).

On December 26, 2010, Plaintiff returned to the ER complaining of an asthma attack after going outside into cold air. (Tr. 473). Upon examination, Plaintiff showed no respiratory distress but her lung sounds were diminished. (Tr. 474). Chest x-rays indicated no active disease, Plaintiff's heart appeared normal in size, and her lungs were satisfactorily aerated with no evidence of active inflammatory or neoplastic disease. (Tr. 478). Plaintiff was not admitted to the hospital and was discharged within several hours. (Tr. 474).

### 2.  Harwinder S. Ahluwalia, M.D., Pulmonologist

On March 17, 2010, Dr. Ahluwalia examined Plaintiff for complaints relating to shortness of breath, wheezing, coughing and tightness in her chest.  (Tr. 323).  Dr. Ahluwalia noted that Plaintiff's "clothes reek[ed] of cigarette smoke," that Plaintiff started smoking when she was 12, and that she had been smoking one-and-a-half packs of cigarettes every day for the past 40 years.  (Tr. 323-24).  Dr. Ahluwalia explained that Plaintiff "knows she needs to quit and has been told to quit by every physician that she sees."  (Tr. 324).  Dr. Ahluwalia noted that Plaintiff had chest pain and tightness in the past year, and that she had a "chronic cough especially first thing in the morning when she awakens."  (Tr. 324).  Dr. Ahluwalia recommended that Plaintiff discontinue her use of Lisinopril to ease her coughing spells, and "strongly emphasized that she should quit smoking completely"; he noted that "she is not at all motivated to quit smoking at this time."  (Tr. 326).

On April 5, 2010, Dr. Ahluwalia again noted that Plaintiff smelled like cigarettes and that she smoked a pack of cigarettes per day.  (Tr. 321-22).  On examination, Dr. Ahluwalia reported that Plaintiff's coughing spells were less noticeable and that her mild COPD "should not be causing as much symptoms as the patient seems to be having at this time."  (Tr. 321-22).  On May 5, 2010, Dr.

Ahluwalia reported that Plaintiff's coughing spells were less noticeable since she "cut down her use of Lisinopril." (Tr. 319). Moreover, Dr. Ahluwalia reported that although Plaintiff "does tend to cough first thing in the morning . . . and has to use an inhaler . . . [a]fter approximately 5 minutes, she does better and does not have as much distress." (Tr. 319). Dr. Ahluwalia stated that Plaintiff continued to report shortness of breath on minimal exertion and explained, "I have suggested once again that she should quit smoking completely as the trachea bronchitis is contributing to her coughing spells and shortness of breath." (Tr. 319-20).

On July 5, 2010, Plaintiff returned to Dr. Ahluwalia, who indicated that Plaintiff had mild COPD, nicotine addiction, and possible bronchial asthma. He also noted that Plaintiff's "PFTs do not reveal significant improvement with inhaled bronchodilators." (Tr. 317). Dr. Ahluwalia reported that Plaintiff's "coughing spells are diminished since she is off the ace-inhibitors. She is currently feeling better." (Tr. 317, 318). Dr. Ahluwalia also noted that Plaintiff was willing to consider quitting smoking, and that he had prescribed Chantix and Ativan, as well as a nicotine patch, to help Plaintiff quit smoking. (Tr. 318).

### 3.  Schuylkill Medical Center Sleep Disorders Center: Joseph Cable, D.O.

On July 21, 2010, Plaintiff saw Dr. Cable for an evaluation of her nocturnal gasping, snoring, and daytime sleepiness. (Tr. 174). Dr. Cable reported that

"snoring is a major issue for this patient," but that there was "no sleep apnea." (Tr. 175). Indeed, Dr. Cable noted that Plaintiff had "a history of nocturnal gasping," but that "[t]his did not occur on this sleep night." (Tr. 175). Dr. Cable recommended that Plaintiff lose weight and "avoid sleeping in the supine position." (Tr. 175).

### 4. Hamburg Family Practice: Rebecca Odorizzi, D.O.;

On October 13, 2010, Plaintiff was examined and her lungs were clear, trachea was normal, and there was no pleural effusion or pneumothorax. (Tr. 182). On April 19, 2011, Dr. Odorizzi examined Plaintiff for complaints related to congestion, wheezing, shortness of breath and chest tightness. (Tr. 480). Plaintiff's lungs had decreased breath sounds, but she was not in any acute distress and her heart maintained a regular rate and rhythm without murmurs, rubs or gallops. (Tr. 482). Dr. Odorizzi recommended that Plaintiff quit smoking and started her on Omnicef and Medrol for bronchitis. (Tr. 482).

### 5. Marshall-Rismiller & Associates: Cynthia Lubinsky, D.O.; Cristin Weicker, D.O.

On May 3, 2011, Plaintiff saw Dr. Lubinsky for complaints related to insomnia (Tr. 459). At that time, Plaintiff denied shortness of breath. (Tr. 459). On June 16, 2011, Plaintiff underwent a stress test. (Tr. 457). The results

indicated appropriate heart rate and blood pressure response; however, Plaintiff demonstrated relatively poor exercise tolerance for her age, which was attributed to chronic tobacco use.  (Tr. 457).

On August 9, 2011, Plaintiff was seen by Dr. Weicker, to address Plaintiff's reported difficulty breathing was tough in humidity.  (Tr. 447).  Plaintiff denied any cough or wheezing.  (Tr. 447).  Upon examination, Plaintiff showed no signs of acute distress and her lungs were clear to auscultation bilaterally with no rales, rhonchi or wheezes.   (Tr. 448).   Dr. Weicker examined Plaintiff again on November 14, 2011.  (Tr. 435).  Plaintiff denied coughing and wheezing, but reported that her "breathing [was] bad when she[was] under stressful situations." (Tr. 435).  Upon examination, Plaintiff demonstrated no signs of acute distress, and her lungs were clear to auscultation bilaterally with no rales, rhonchi or wheezes. (Tr. 436).

### 6.  Berks Cardiologists: Frank Politzer, M.D.

On June 21, 2011, Dr. Politzer examined Plaintiff noting that she had a well-documented history of non-cardiac chest pain.  (Tr. 489).  Upon examination, Plaintiff appeared healthy and was not in acute distress.  (Tr. 490).  Plaintiff maintained normal respiratory effort, and her lungs were clear to auscultation.  (Tr. 490). Dr. Politzer noted that Plaintiff had "obvious coronary artery risk factors . . .

not the least of which is her ongoing tobacco abuse of 1.5 packs of cigarettes daily." (Tr. 491). However, Dr. Politzer noted that "[i]n the absence of any documented heart disease or suspicion at this juncture of heart disease, I have not given the patient a follow-up appointment." (Tr. 491).

### 7.   Berks/Schuylkill Respiratory Specialists: Paul Stelmach, M.D.

On June 30, 2011, Plaintiff was seen by Dr. Stelmach who reported that Plaintiff was "doing fairly well," and that her Albuterol use had decreased dramatically. (Tr. 500). Dr. Stelmach noted that Plaintiff's cough had improved and that she had no shortness of breath. (Tr. 500). Upon examination, Plaintiff's heart maintained a regular rate and rhythm and her lungs were clear to auscultation and percussion. (Tr. 500). Dr. Stelmach reported that Plaintiff's condition was worsened by ongoing tobacco abuse but that Plaintiff was clinically stable on her current therapy. (Tr. 500).

On December 8, 2011, Dr. Stelmach examined Plaintiff and noted that she reported "a little bit more sputum" and "a little bit more cough," but no shortness of breath and only occasional dyspnea and chest lightness (Tr. 494). Plaintiff reported having used her rescue inhaler only 8 to 10 times since her last appointment. (Tr.

494).  Dr. Stelmach reported that Plaintiff was "[o]verall about the same" but that she would do much better if she would stop smoking (Tr. 495-96).

### 8.  Gianfranco Toso, M.D.

Plaintiff reports that she has been treated by Dr. Toso for at least forty years. (Tr. 137).  Dr. Toso examined Plaintiff for issues relating to her hearing aids.  (Tr. 265-67).  Dr. Toso's notes indicate that Plaintiff suffered from congenital hearing loss and that she had used a hearing aid since she was twenty-one-years-old.  (Tr. 267).   An audiogram showed 60 decibel loss of hearing with 48 percent discrimination in the right and 96 percent discrimination in the left.  (Tr. 267-68). Dr. Toso noted that Plaintiff "should do very well with amplification."  (Tr. 267).

In October 2009, Plaintiff received new hearing aids.  (Tr. 267).  Although the records indicate that Plaintiff struggled with the aids between November and December 2009, by January 25, 2010, Dr. Toso reported that "Plaintiff was "doing better with aid set to manual setting and not automatic," and advised Plaintiff to return for a follow-up in six months.  (Tr. 265).  In July 2010, Plaintiff advised Dr. Toso that she did not want any changes made to her hearing aids.  (Tr. 265).

### 9.  Harshadkumar Patel, M.D., State Agency Medical Opinion

On  May  16,  2010,  Dr.  Patel  completed  a  physical  residual  functional capacity ("RFC") assessment for Plaintiff.  (Tr. 373).  He concluded that Plaintiff

could lift and/or carry 20 pounds occasionally and frequently lift and/or carry 10 pounds. (Tr. 374). According to Dr. Patel, Plaintiff could sit for six hours and stand and/or walk for about 6 hours in an 8-hour workday, and had no pushing, pulling, manipulative, visual or communicative limitations. (Tr. 374-75). In addition, Dr. Patel noted that Plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl, and that Plaintiff had to avoid concentrated exposure to humidity and moderate exposure to extreme cold, fumes, odors, dusts, gases and poor ventilation. (Tr. 374, 376).

### III.    Legal Standards and Review of ALJ Decision

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A). A claimant for disability benefits must show that he or she has a physical or mental impairment of such a severity that:

> [H]e is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate

area in which he lives, or whether a specific job vacancy exists for
him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a
person is eligible for disability benefits. 20 C.F.R. § 404.1520; *accord Plummer*,
186 F.3d at 428. If the Commissioner finds that a Plaintiff is disabled or not
disabled at any point in the sequence, review does not proceed. 20 C.F.R. §
404.1520(a)(4). The Commissioner must sequentially determine: (1) whether the
claimant is engaged in substantial gainful activity; (2) whether the claimant has a
severe impairment; (3) whether the claimant's impairment meets or equals a listed
impairment; (4) whether the claimant's impairment prevents the claimant from
doing past relevant work; and (5) whether the claimant's impairment prevents the
claimant from doing any other work. 20 C.F.R. §§ 404.1520, 416.920. Before
moving on to step four in this process, the ALJ must also determine Plaintiff's
residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The
claimant bears the burden of proof at steps one through four. *See Mason v.
Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). If the claimant satisfies this burden,
then the Commissioner must show at step five that jobs exist in the national

economy that a person with the claimant's abilities, age, education, and work experience can perform. *Id.* The ultimate burden of proving disability within the meaning of the Act lies with the plaintiff. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

When reviewing the Commissioner's decision denying a claim for disability benefits, the Court must uphold the findings of the Commissioner so long as those findings are supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 564 (1988) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence requires only 'more than a mere scintilla' of evidence, *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)), and may be less than a preponderance. *Jones*, 364 F.3d at 503. If a reasonable mind might accept the relevant evidence as adequate to support a conclusion reached by the Commissioner, then the Commissioner's determination is supported by substantial

evidence. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Johnson*, 529 F.3d at 200.

## A. Step Two Severity of Impairment

Plaintiff argues that the ALJ erred by failing to consider Plaintiff's hearing loss as a severe impairment. Pl. Brief at 2. Plaintiff specifies that she has "60% hearing loss in both ears cause by a hereditary nerve deafness, which her treating doctor, Dr. Toso stated is a permanent impairment." Pl. Brief at 2. Plaintiff also argues that the ALJ's factual error regarding Plaintiff's history of wearing hearing aids in both ears, necessitates a remand. Pl. Brief at 2. Specifically, Plaintiff states that she "has worn a hearing aid in her left ear since 1980 and the [Office of Vocational Rehabilitation] assisted her with obtaining a new hearing aid, for her right ear, in 2009"; however, "[i]n the decision, the ALJ states [Plaintiff] only began wearing a hearing aid in 2009." Pl. Brief at 2. Plaintiff also points out that although the ALJ stated that Plaintiff had surgery on her right eye for a benign cyst, in fact, the surgery was for a cyst in her ear. Pl. Brief at 3. Plaintiff concludes that the "ALJ' s reasoning that Plaintiff's hearing loss is not severe because she could understand her representative and the ALJ at the hearing is completely contrary to medical evidence and doctors' opinions; further, [Plaintiff] did in fact require the ALJ to repeat questions numerous times throughout the

hearing." Pl. Brief at 2-3.[1]

At step two of the five-step sequential inquiry, the ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). An impairment is severe only if it significantly limits the claimant's physical or mental ability to do "basic work activities," *i.e.*, physical "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling," or mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

---

[1] Plaintiff also states, that "she has numerous severe impairments which met multiple listing impairments which are supported by the medical records and testimony; the impairments prevent her from doing past relevant work or any other work, as is was [sic] also testified to by the vocational expert." Pl. Brief at 4. It is unclear whether Plaintiff requests the Court to engage in an overarching review to determine whether Plaintiff "met multiple listing impairments which are supported by the medical records." The Court reminds Plaintiff that Local Rule 83.40.4(b) requires that in social security cases, a Plaintiff's brief "shall set forth . . . the specific errors committed at the administrative level which entitle plaintiff to relief." M.D. Pa. Local Rule 83.40.1. Local Rule 83.40.4(b) elaborates that "[a] general argument that the findings of the administrative law judge are not supported by substantial evidence is not sufficient." *Id.*; *cf. Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231-32 (3d Cir. 2008) (explaining that Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a 'showing,' rather than a blanket assertion, of entitlement to relief and, as a threshold requirement, the plain statement of pleadings must possess enough heft to show that the pleader is entitled to relief). Failure to adequately raise an issue results in its waiver. *See Kiewit Eastern Co., Inc. v. L & R Construction Co., Inc.,* 44 F.3d 1194, 1203-04 (3d Cir.1995) (upholding a district court's finding that a party had waived an issue when a party only made vague references to the issue).

A "severe" impairment is distinguished from "a slight abnormality," which has such a minimal effect that it would not be expected to interfere with the claimant's ability to work, regardless of her age, education, or work experience. *See Bowen*, 482 U.S. at 149-51.  The claimant has the burden of showing that an impairment is severe.  *Bowen*, 482 U.S. at 146 n. 5.  Moreover, objective medical diagnoses alone are insufficient to establish severity at step two; a claimant must also present evidence that these limitations significantly limited his or her ability to do basic work activities or impaired his or her capacity to cope with the mental demands of working.  *See* 20 C.F.R. § § 404.1520(c), 404.1521(a); *see also Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 144-45 (3d Cir. 2007).

If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 404.1520(d)-(g).  A failure to find a medical condition severe at step two will not render a decision defective if some other medical condition was found severe at step two and all impairments are considered at step four when setting the residual functional capacity.  *See* 20 C.F.R. §§ 404.1523 and 404.1545(a)(2); *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005); *Shannon v. Astrue*, No. 4:11-CV-00289, 2012 WL 1205816, at *10-11 (M.D. Pa. Apr. 11, 2012); *Bell v. Colvin*, No. 3:12-CV-00634, 2013 WL 6835408, at *8 (M.D. Pa. Dec. 23, 2013).

Ultimately, the outcome of the case depends on the demonstration of the functional limitations of the impairment.  *See Alexander v. Shalala*, 927 F. Supp. 785, 792 (D. N.J. 1995) *aff'd sub nom. Alexander v. Comm'r of Soc. Sec.*, 85 F.3d 611 (3d Cir. 1996); *accord*, *Walker v. Barnhart*, 172 F. App'x 423, 426 (3d Cir. 2006).  Where the ALJ finds that Plaintiff suffers from even one severe impairment, any failure on the ALJ's part to identify other conditions as severe or precisely name the severe impairment does not undermine the entire analysis, when ultimately the ALJ properly characterized the symptoms and functional limitations.  *See e.g.*, *Lambert v. Astrue*, No. Civ. A. 08-657, 2009 WL 425603, at *13 (W.D. Pa. Feb. 19, 2009); *Alexander v. Shalala*, 927 F. Supp. 785, 792 (D. N.J. 1995) *aff'd sub nom. Alexander v. Comm'r of Soc. Sec.*, 85 F.3d 611 (3d Cir. 1996); *Faircloth v. Colvin*, No. Civ.A.12–1824, 2013 WL 3354546, at *11 (W.D.Pa.2013), *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n. 2 (3d Cir. 2007); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("any error here became harmless when the ALJ reached the proper conclusion that [Plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step"); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("[T]he ALJ considered any limitations posed by the [impairment] at Step 4 . . . any error that the ALJ made in failing to include the [impairment] at Step 2 was harmless").

The Court notes that the ALJ's opinion considered all impairments of record and detailed the limitations resulting from the impairments at subsequent steps. Although the ALJ's error of stating that Plaintiff testified that she had worn a hearing aid since 2009 (Tr. 16) without specifying that Plaintiff had bilateral hearing aids since 2009, such error is harmless given that the ALJ correctly noted that Plaintiff had "moderate hearing loss bilaterally," her "speech discrimination is good on the left," and that Plaintiff had "been recommended bilateral hearing aids" (Tr. 17).

Plaintiff argues that the ALJ's observation that Plaintiff could hear sufficiently to successfully complete the hearing, was in error since Plaintiff had to ask the ALJ to repeat questions "numerous times throughout the hearing" and the ALJ's characterization of Plaintiff's hearing was "completely contrary to medical evidence and doctors' opinions." Pl. Brief at 2-3. Even with Plaintiff requesting the ALJ to repeat questions, Plaintiff underwent the hearing with only one of the required two hearing aids and testified that once the cyst surgery healed, she would be able to wear two hearing aids again. (Tr. 61-62).

Contrary to Plaintiff's assertions, the medical opinion of Dr. Patel states that Plaintiff "has moderate hearing loss bilaterally" with "speech discrimination is pretty good on the left" (Tr. 372) and opined that Plaintiff did not have any

communicative limitations (Tr. 376).   Moreover, when the ALJ asked the vocational expert if a person was "limited to occupations that do not require fine hearing and can perform work that does not require frequent verbal communication," the vocational expert testified that such limitations would not change the number of available jobs that she could perform.  (Tr. 79).

Given that Plaintiff was able to successfully participate in the hearing with only one of the prescribed two hearing aids, although she had to request for questions to be repeated, it was reasonable for the ALJ to find that Plaintiff's hearing impairment did not pose a significant limitation on her ability to work and substantial evidence supports the ALJ's conclusions that Plaintiff's hearing loss did not amount to a severe impairment.

## B. Borderline Age

Plaintiff argues that she "should be granted disability benefits due to the fact that she is of "advanced age."  Pl. Brief at 5.  Plaintiff adds that "[b]y the time the Appeals Council made their decision in August, 2013, Plaintiff was 55 years of age which puts her in the category which Social Security considers "advanced age."

Social security regulations provide that an ALJ may not mechanically apply the age factor.  *See* 20 C.F.R. § 404.1563(b).  Indeed pursuant to subsection (b) of 20 C.F.R. § 404.1563:

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b). Thus, a "borderline age situation" exists when two criteria are satisfied: the claimant's age is "within a few days to a few months of the next higher age category" and "using the higher age category result in a determination of 'disabled' while using the claimant's chronological age would result in a determination of 'not disabled.'" POMS DI 25015.005(D)(4). Additionally, "age" is calculated at the time when the decision as to whether a claimant is disabled under § 404.1520(g)(1) is rendered. 20 C.F.R. § 404.1563(a). A borderline age situation does not require that an ALJ apply the older age category. However, it does require the ALJ to address the borderline age situation. *See Cotter,* 642 F.2d at 704; *Fargnoli v. Halter,* 247 F.3d 34, 40 (3d Cir. 2001).

Plaintiff did not reach age 55 until December 2012, ten months after the ALJ's February 2012 decision. The Court notes that Plaintiff's borderline age argument is similar to the argument presented to the Ninth Circuit in *Russell v. Bowen*, 856 F.2d 81, 84 (9th Cir. 1988). In *Russell v. Bowen*, the Ninth Circuit found that contrary to the plaintiff's assertion, the age at the time of the Appeals

Council decision was not the applicable time to calculate Plaintiff's age and concluded that at the time of the final decision, Plaintiff was 59 years and 5 months old and that "this [was] not a borderline case. Petitioner was more than a few days short of the cut-off date, and was in fact closer to age 59 than to age 60." *Russell v. Bowen*, 856 F.2d 81, 84.  The Ninth Circuit explained that "[l]ine drawing is reasonable and in accordance with the express language and purpose of these regulations."  As observed by the Ninth Circuit, the Court finds that the 20 C.F.R. § 404.1563 clearly contemplates a timeframe that is closer to the next higher age category.  *See* 20 C.F.R. § 404.1563(b); POMS DI 25015.005(D)(4); *Russell v. Bowen*, 856 F.2d 81, 84.

Based on the foregoing the Court concludes that Plaintiff does not fall within the "borderline" age provision since her age at the time of the decision ten months from the next higher age category and was not "within a few days to a few months of the next higher age category."  *See* 20 C.F.R. § 404.1563(b); POMS DI 25015.005(D)(4).

## IV. Conclusion

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the

findings were supported by substantial evidence.  42 U.S.C. §§ 405(g), 1382c; *Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552; *Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503. Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. *Monsour Med. Ctr.*, 806 F.2d at 1190. Here, a reasonable mind might accept the relevant evidence as adequate. Accordingly, the Court will affirm the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

An appropriate Order in accordance with this Memorandum will follow.


Dated: March 31, 2015                              s/Gerald B. Cohn
                                            _____
                                                   GERALD B. COHN
                                            UNITED STATES MAGISTRATE JUDGE